[File No. 6979]

JOHN MIELCAREK, Respondent, v. FRANK RISKE, Appellant.

(21 NW2d 218)

Opinion filed November 16, 1945.   Rehearing denied January 9, 1946

*Lyche & Lyche,* for appellant.

*Day,. Lundberg & Stokes,* for respondent.

BURR, J. April 19, 1944, plaintiff commenced an action in justice court to recover possession of his farm lands and for $200 damages—alleging the defendant held over after his lease expired. The defendant was in possession and answered claiming a right to possession for 1944 and that he had sown some crop on the land in April 1944.

April 29, 1944, the justice gave plaintiff judgment for the possession of the land and costs, and ordered "that defendant be ousted therefrom." Defendant appealed to the district court demanding a new trial, and served an "undertaking for stay of execution on appeal." Plaintiff's motion to vacate the stay bond was granted by the district court on May 20, 1944, and the

defendant decided to "proceed with appeal without a stay of execution."

At the trial in district court it was stated the defendant had notified the plaintiff on May 19 he would surrender the premises on that day and did so.

In June 1944 the plaintiff filed an amended complaint wherein he alleged his ownership of the land; that the same had been rented to the defendant for the farming seasons of 1942 and 1943 and a notice to vacate the premises had been served upon the defendant on April 15, 1944; a lease to another party for the years 1944 to 1948 inclusive; payment of $640 by the new tenant as cash rental for one year; and the failure of the defendant to deliver possession of the land. The plaintiff therefore prayed "that he have judgment against the Defendant for the possession of the above described lands and for damages" in the sum of $2700.

The defendant answered alleging he had rented the land from the plaintiff for 1944; had planted 77 acres of wheat and 30 acres of barley; that relying upon his lease he prepared the land for flax; that he was entitled to the use and possession of the land and had been unlawfully dispossessed by the plaintiff. He asked for judgment for possession of the land for the season of 1944, and damages "for the dispossession" in the sum of $2,000. He claimed to be entitled to double damages under the statute, his allegations with respect thereto being that he had "sustained damage by loss of crops and the opportunity to farm said lands during the season of 1944."

The case that was tried in the district court is not the case that was tried in the justice court. The justice court would have had no jurisdiction to try the issues that were presented to the district court. The district court had jurisdiction of the case however, as an original proposition. See Bryan v. Miller, 73 ND 487, 16 NW2d 275.

In the charge to the jury the court set forth the issues in the pleadings, in substance as hereinbefore stated, and informed the jury that the main issue in the case was "whether or not the plaintiff and the defendant agreed to renew the lease for anoth-

er farming season covering the year 1944." The court charged that if the jury found there was no renewal then "the defendant would not have been entitled to start cultivating the land. He would not have had the right to seed the same. . . . Or to enter thereon, for the purpose of utilizing the premises for cultivating [purposes]." If there was no renewal then the jury should direct its attention to the plaintiff's claim for damages.

The court also charged the jury that if, "the plaintiff has not made out his case here, and that the defendant has made out his claim that he did have an oral arrangement for a renewal of the lease and right to occupy the premises for the season of 1944, then, of course, the plaintiff would not have had a right to put him off."

In such case the jury should determine the actual loss sustained by the defendant and if he had been forcibly ejected he would be entitled to treble damages. Thus the issues framed by the pleadings were submitted.

The court submitted three forms of verdict. The first, he stated, would be "in favor of the plaintiff and against the defendant and assess the plaintiff's damages at the sum of" dollars, amount to be determined by the jury; and this was the verdict to be returned if the jury found "the plaintiff is entitled to recover." The second form of verdict was, the jury "find in favor of the defendant and against the plaintiff and assess the defendant's damages at the sum of" dollars, amount to be determined by the jury, and this was the verdict to be returned if it was found "that the defendant has made out his case, that he had a renewal of the lease by oral arrangement or otherwise for the farming season of 1944. . . ."

These two forms would have taken care of the issues as presented. If the jury found for the plaintiff the jury would determine the plaintiff was entitled to the possession and would assess his damages if any. If the jury returned the second form the defendant would be entitled to possession and the jury would assess his damages if any.

The court submitted this third form: "We, the jury, impaneled and sworn to try the above entitled action, find in favor of

the defendant for a dismissal of this case." The court stated this was the verdict the jury should return in case it found "neither party is entitled to recover damages in this case. . . ."

While the jury was considering the case it thrice submitted written questions to the court. One question was: "If we find in favor of the Defendant and against the Plaintiff for dismissal of the case, who gets the crop? The court answered in writing, "The Plaintiff gets the crop."

The second question was: "The jury wishes to know who gets 1944 crop on land in question which Riske planted." To this the court answered, "The Plaintiff gets it since Defendant turned over the land on May 19th."

Again the jury wrote to the court asking, "If the verdict is for the Defendant does the Plaintiff get the crop?" To this the court replied, "Yes."

On July 7, 1944 the jury returned this verdict: "We the jury in the above entitled action find in favor of the Defendant and against the Plaintiff therein *for a dismissal of the action.*"

July 10, 1944 the court ordered a stay of execution for 60 days, the order reciting the application was made "by the "Plaintiff for a Stay of Proceedings to permit moving for a new trial and such other proceedings as may be deemed necessary. . . ." Evidently the first impression of the plaintiff was that his case was dismissed.

On July 26, 1944 the court ordered judgment in part as follows:

"said jury, . . . having on the 7th day of July, 1944, duly returned a verdict for the dismissal of said appeal, . . . it is Ordered, Adjudged and Decreed that the Plaintiff, John Mielcarek, have judgment that he is and was entitled to the possession of the land in controversy herein and which had been surrendered to him during the pendency of this action, of crops thereon."

Upon this order judgment was entered on July 26, 1944 in part as follows:

"It is hereby Ordered, Adjudged and Decreed that the Plaintiff, John Mielcarek, have judgment that he is now, and at all

times was entitled to the possession of the land in controversy in this action"—(describing it).

On August 4, 1944 the defendant applied to and received from the district court an "order to show cause" why: (1) "the Order for Judgment, Judgment . . . be not in all things vacated and set aside," and (2) "Why Judgment should not be entered in favor of the Defendant and against the Plaintiff, pursuant to the verdict found by the jury on the 7th day of July A. D. 1944, and entered in this action;" and (3) "Why the Defendant should not have the crops sown, grown, and harvested or to be harvested upon said lands during the season of 1944, pursuant to the oral lease claimed by him." (4) "Why he should not have the costs and disbursements in the action and costs upon this hearing." There were several other points stated not necessary to set out.

January 12, 1945 the court denied the motion in toto. From this order the defendant has appealed.

The appeal involves matters of practice. The respondent moved to dismiss the appeal on the ground that the order is nonappealable. The motion must be denied. The order was "a final order affecting a substantial right made . . . upon a summary application in an action after judgment." The order therefore is appealable. See subd 2 of § 28–2702, Rev Code.

The second point of practice involved is whether the appellant has shown he pursued the proper remedy in moving to vacate the judgment entered.

Section 28–1507, Rev Code, provides that when a verdict is announced, "if it is informal or insufficient in not covering the issues submitted, it may be corrected by the jury under the advice of the court, or the jurors again may be sent out." Section 28–1907, Rev Code, provides that upon a return of a verdict, it may be vacated and a new trial granted by the court, "when there has been such plain disregard by the jury of the instructions of the court or of the evidence in the case as to satisfy the court that the verdict was rendered under a misapprehension of such instructions . . . ." Section 28–1508, Rev Code, provides, that where a verdict is received "an entry

must be made by the clerk in the minutes of the court"—specifying certain rules. Section 28–2001, Rev Code, provides that judgment may be entered by either party upon an issue of fact and if by the losing party this is without prejudice to his right to attack the same. If a party aggrieved has followed the required procedure he may move for judgment notwithstanding the verdict. Section 28–1510, Rev Code, makes provision for such practice, and for setting aside the verdict and any judgment thereon and the granting of a new trial.

While the record does not show respondent applied for judgment notwithstanding the verdict the method he followed is tantamount to that practice. Such procedure has no warrant here, even though the judgment entered recited it was entered on the motion of "the attorneys for the plaintiff."

When a general verdict is received and recorded, and judgment is entered thereon the judgment entered must be in conformity with the verdict. "There is no principle of law more firmly established than that the judgment must follow and conform to the verdict, . . ." "A judgment must be supported by the verdict . . . ." 33 CJ 1169.

The term conformity means "in harmony therewith," agreeable to the verdict. This is the definition given by Webster and one that is adopted by the courts. See Eason v. Miller, 15 SC 194, 200. Here the court goes extensively into this meaning. There is very little difference if any between the conformity of a judgment to the verdict and conformity of judgment to findings. When the verdict is in "favor of the Defendant and against the Plaintiff therein for a dismissal of the action," then the judgment entered thereon must be for the defendant and against the plaintiff for the dismissal of the action. Otherwise it is not in conformity with the verdict. See also Blankenship v. Unemployment Comp. Commission, 177 Va 250, 13 SE2d 409, 412.

In a very early case this court construes this term "in conformity with the verdict" to mean "in accordance with the verdict." This expression is an old one in our code. We find the

phrase in § 33–0807, Rev Code, which is identical with § 6104 of the Code of 1887. In dealing with judgments rendered on verdicts in justice courts the statute provides, "The judgments must be entered by the justice at once *in conformity* with the verdict." This section is cited by this court in Re Evingson, 2 ND 184, 187, 49 NW 733, 23 Am St Rep 768, and the term "in accordance" is used in place of "in conformity with," making the terms synonymous.

In California the statute requires entry of judgment in conformity with the verdict. In Shriver v. Superior Ct. 48 Cal App 576, 584, 192 P 124, 128, it is stated that where a verdict is rendered, judgment to be "in conformity with the verdict . . . must be entered in favor of the party securing the verdict; otherwise the judgment is meaningless." The expression is not used in the statutory procedure in district court; nevertheless the rule which we have quoted from 33 CJ 1169 is the almost universal rule, even where no statutory direction is made, and therefore when judgment is rendered on a general verdict the judgment must be in accordance with the verdict or in conformity with the verdict.

In Manning v. Orleans, 42 Neb 712, 60 NW 953, this proposition is discussed and the court says, "Where the verdict is general, and is unassailed by a motion for a new trial, judgment must . . . be entered in conformity with the verdict" except in such case as where a motion for judgment notwithstanding the verdict is involved. Later the same court became more explicit. In Bielfeldt v. Grand Island Transit Co. 123 Neb 368, 243 NW 76, the court says, "In a case in which a party is entitled to a jury trial, and where the pleadings do not confess the right to a judgment, the court cannot disregard the verdict and enter such judgment as the evidence warrants. If the verdict is not sustained by the evidence, the remedy is by motion for a new trial on that ground."

A judgment entered on a general verdict, that fails to conform to the verdict is irregularly entered. The term "irregularity" means "not conforming to rule or law; deviation from

what is . . . established . . . law." See Webster. Where, in entering a judgment there is a want of adherence to some prescribed rule or mode of proceeding, or the entering of it in an improper manner then there is an irregularity in entering the judgment. See Ealy v. McGahen, 37 NM 246, 21 P2d 84. See also Griggs v. Hanson, 86 Kan 632, 121 P 1094, 52 LRA (NS) 1161, Ann Cas 1913C 242; Duncan v. Wilkins, 103 Okla 221, 229 P 801, 802; Ex parte Cooks, 61 Tex Crim Rep 449, 135 SW 139.

Where a judgment is entered irregularly the remedy is to have the judgment vacated on motion and a proper judgment entered. In Olson v. Mattison, 16 ND 231, 112 NW 994, this court laid down the rule of practice with regard to irregularities as follows: "Irregularities in the rendition of judgment may be corrected by motion; but the correction of errors of law occurring at the trial, or in framing or receiving special verdicts, or in entering judgment thereon, can only be made by appeal or motion for a new trial."

In People ex rel. Oswald v. Goff, 52 NY 434, it is stated "where a clause is inserted in a judgment without authority, the proper remedy is by motion in the court below to correct the judgment, not by appeal." See also Leonard v. Columbia Steam Nav. Co. 84 NY 48, 38 Am Rep 491. In Kenney v. Apgar, 93 NY 539, the court makes distinction between an irregular and an erroneous judgment. The appellants had urged that the judgment was erroneous, as it departed from the directions contained in the decision of the court. The court held (p 547) that the judgment departed from the direction contained in the decision of the court, and "where a judgment does not conform to the decision the remedy of the party aggrieved is by application to the court to correct the judgment, and not by appeal."

In Campbell v. Seaman, 63 NY 568, 586, 20 Am Rep 567, 579, a referee had ordered an injunction and it is stated a party complained, "that the injunction contained in the judgment as entered is broader and more unlimited than that ordered by the referee. This is a matter not to be corrected upon appeal. Defendant should have compelled an entry of judgment in accord-

ance with the decision of the referee. If plaintiffs enter a judgment not authorized by the referee's report defendant should have moved to set it aside or correct it." This prescribed procedure is the one the defendant followed in this case at bar.

Respondent cites and relies upon certain of our decisions, viz: Gaar, S. & Co. v. Spaulding, 2 ND 414, 51 NW 867; State ex rel. McClory v. Donovan, 10 ND 203, 86 NW 709; Olson v. Mattison, 16 ND 231, 112 NW 994; Boyd v. Lemmon, 49 ND 64, 189 NW 681; Engen v. Medberry Farmers Eq. Elevator Co. 52 ND 681, 204 NW 7; Dixon, Inc. v. Central Motors Co. 68 ND 264, 278 NW 648. He admits this court has held that the method to be adopted, where a judgment is irregularly entered, is the method adopted by the defendant; but appears to argue that in the case at bar the court was required to pass upon facts submitted, and thus the decision thereon became a matter of law. The record shows no facts submitted to the court requiring a decision.

"Irregularity" does not apply in cases where the court has power to hear and determine a fact. Bank of Commerce v. Williams, 52 Wyo 1, 69 P2d 525, 529, 110 ALR 1463. The matter before us is merely a question of entering the judgment in accordance with the plain language of the verdict. There was not even an application to vacate the verdict, or to have judgment entered notwithstanding the verdict.

The plaintiff relies upon Olson v. Mattison, 16 ND 231, 112 NW 994, but mistakes its application. This case cited is not applicable to the situation here. There a special verdict was submitted to the jury; and after the special verdict was returned, plaintiff moved for judgment thereon, the motion being opposed by defendants. Plaintiff's motion was granted.

Defendants moved to vacate this judgment. The determination of that issue was a matter solely within the province of the court and the determination was a matter of law. Hence we held that an order denying defendants' motion was not appealable. We said, "Whether the special verdict was framed in accordance with established procedure, and whether the same was in all respects sufficient to warrant the entering of judgment thereon, are strictly questions of law."

Respondent urges in effect that the question of possession was not an issue, as the defendants surrendered possession, and the only question really involved was one of damages. He states in his brief that "No claim to any right of possession beyond November 1, 1944, being even pretended to" by the defendant; that the defendant had shifted "his theory from one of claiming possession in the Justice Court to one of claiming *statutory double damages* in the District Court." "Were not all valid issues raised by defendant's motion entirely moot when the court made its order on January 4, 1945?" "Defendant had his choice . . . to continue his *possessory action* which he stood on in Justice Court, or to consider himself as evicted and proceed for damages. In his Amended Answer he elected the latter course."

But in this amended answer defendant asserted he "was unlawfully dispossessed by the Plaintiff" and he prays judgment giving him possession of the land.

Plaintiff's complaint, drawn and filed a month after he knew the defendant had been dispossessed by voluntary obedience to judgment of ouster, prayed that he have judgment for the possession of the land. He recognized that though the defendant was off the premises nevertheless the question of the right to possession was still an issue and such was the defendant's theory in his answer to the complaint. Reference is made in the brief to an alleged amendment at trial, but this is not in the judgment roll, and the trial court in his memorandum opinion on defendant's motion to vacate the judgment, states: "In district court both parties amended their pleadings, each demanding possession of the premises. . . . the case was tried on the issues thus formed."

In his brief respondent states that certain theories adopted by the defendant "led the Trial Court to find that *the only issues remaining were damages.*" The court did not charge the jury that the only issue was that of damages. After the verdict was returned and filed, the court, knowing the case, may have come to the conclusion that the question of damages was the only question in dispute. But if the court, on reflection, determined

he should have so charged the jury, and that he had erred in not doing so, the remedy is not that of entering a judgment contrary to the verdict.

It seems to be the theory of respondent that the jury intended to give possession of the land to the plaintiff and deny the defendant damages; that their questions turned largely upon the ownership of the crop that had been planted and from the answers the court gave to these questions the jury intended the plaintiff should get the land and the crop. If there had been foundation for such an assumption the verdict returned could have "been corrected by the jury under the advice of the court, or the jury again sent out" as provided by § 28–1507, Rev Code, already quoted. The record may indicate the jury was confused with reference to the rights of the respective parties; but we are dealing here solely with the question of whether the judgment entered was in conformity with the verdict. We are concerned with the "intent" or purport of the verdict. Regardless of opinion as to what was the intent of jurors (and here intent must be determined from the verdict itself) the jury did not find for the plaintiff. In Eason v. Miller, 15 SC 194, 200, it is stated "Conformity" conveys "the idea that the judgment should carry out the intent of the verdict." If judgment was to be entered upon the verdict rendered then it should have been for the defendant for the dismissal of the action. That is the general rule.

However, to this court it is apparent there was confusion in the mind of the jury, and that the interests of justice demand that the judgment should be vacated and the case tried anew. The order denying the vacation of the judgment is reversed and a new trial is ordered. ₒ

CHRISTIANSON, Ch. J., and MORRIS, BURKE and NUESSLE, JJ., concur.

BURKE, J. (on petition for rehearing). In his petition for a rehearing plaintiff asserts that the court in its opinion overlooked or misinterpreted certain of the trial court's instructions to the jury. In so far as the opinion of the court intimates that,

under these instructions, the jury could have rendered a verdict in favor of the defendant for the possession of the property described in the complaint, I think the criticism is well taken. As I read the instructions, but one ultimate question was submitted to the jury. That is the question of whether either party was entitled to damages and the amount of such damages. It is true that other issues such as the existence of a lease and the right to possession of the land were submitted for consideration by the jury but only in so far as these issues had a bearing upon the ultimate question of damages.

This agreement with the plaintiff as to the import of the instructions, however, does not alter my view as to the proper disposition of the case. The third form of the verdict which was submitted to the jury and which the jury returned read: "We the jury, impanelled and sworn to try the above entitled action find in favor of the defendant for the dismissal of the case." This verdict was inherently contradictory. Under the pleadings and the evidence a verdict for the dismissal of the case could not have been a verdict in favor of the defendant as it was the defendant who was seeking the principal affirmative relief in the action. Even though I could assume that, under the instructions, the jury understood a judgment in favor of the plaintiff would be entered upon their verdict "in favor of the defendant" the entry of such a judgment, would nevertheless, in my opinion, be irregular and subject to attack by a motion to set it aside upon that ground.

Under this view it is clear that this court, in the exercise of its broad powers to decide cases in the manner that the ends of justice require, has properly ordered a new trial.