## No. 11,807.

CITY AND COUNTY OF DENVER ET AL. *v*. BOSSIE.

Decided February 27, 1928.    Rehearing denied March 19, 1928.

Action to enjoin City and County of Denver from entering into a contract for the construction of a municipal building.  Decree for plaintiff.

## *Affirmed.*

1.  PLEADING—*Complaint.*  A complaint which states matters of law and violates the Code in respect to the requirement of conciseness and restriction to material facts, should be amended.

2.  MUNICIPAL CORPORATIONS—*Budget System.*  Budgets under sections 198 and 199 of the Denver municipal code, held to cover only the expense of conducting the public business for the next ensuing year, and that future disbursements after the next ensuing year, are not covered thereby.

3.  *Building Contract—Validity.*  A proposed contract for the construction of a municipal building held not unlawful because there was no budget or sufficient appropriation to cover cost of the same, where by the terms of the contract all payments were restricted to sums to be appropriated and budgeted, there being no express or implied agreement to appropriate.

4.  *Ordinances.*  A city council cannot bind itself by ordinance not to do what it may by ordinance do.

5.  PUBLIC WORKS—*Colorado Material—Municipal Corporations.*  City and County of Denver held subject to the provisions of C. L. §§ 453–455, concerning the use of Colorado material in the construction of public works.

6.  MUNICIPAL CORPORATIONS—*Local Matters—Jurisdiction.*  Denver may assume exclusive control of all matters of local and municipal concern, and where she has done so, state laws are not applicable as to such matters.

7.  *Public Works—Court House.*  The building and maintenance of a Denver court house is not such a matter of local and municipal concern as to exempt the municipality from the operation of C. L. §§ 453–455 concerning the use of Colorado materials in public works.

8. CONSTITUTIONAL LAW—*Public Works—Colorado Materials.* C. L.
   §§ 453–455, concerning the use of Colorado materials in public works,
   are not unconstitutional.

*Error to the District Court of the City and County of
Denver, Hon. Julian H. Moore, Judge.*

Mr. HENRY E. MAY, Mr. THOMAS H. GIBSON, Mr. E. V.
HOLLAND, for plaintiffs in error.

Mr. LAWRENCE LEWIS, Messrs. LEE, SHAW & McCREERY,
for defendant in error.

*En Banc.*

MR. CHIEF JUSTICE DENISON delivered the opinion of
the court.

BOSSIE obtained a decree against the City and County
of Denver enjoining it from entry into a contract pursu-
ant to certain bids for the erection of a municipal build-
ing. The city brings error.

The complaint violates the Code in several respects,
especially in respect to the requirement of conciseness
and the restriction to material facts. It even quotes stat-
utes at length. It should have been amended in this
respect.

The substance of the complaint is that the city has
received bids for the erection of a municipal building
the lowest of which amounts to over $4,000,000,* and,
unless restrained will enter into contract for the erection
thereof, without budget, without sufficient appropriation,
without provision for the use of Colorado stone and with-
out provision for Colorado materials. It is claimed that
these omissions make the contract unlawful, and the
district court so decided.

_____

*There were separate bids on different parts of the work, but for sim-
plicity we treat them as one.

1. As to the budget: The claim of plaintiff is that no provision for this expenditure has been made in the Mayor's budget, as required by the charter §§ 196–199.

Section 196 requires the head of each department each year to submit to the mayor an estimate of the probable expense of his department for the ensuing year; § 197 requires the mayor each year to present to the council such a statement for the whole city; §§ 198 and 199 are as follows: "198. The council shall meet in joint session annually between the first and third Mondays in December, and by a vote of the majority of the members thereof make a budget of the estimated amounts required to pay the expenses of conducting the public business for the next ensuing fiscal year, based on the mayor's budget, and for the other purposes required by the charter. The budget shall be prepared in such details as to the aggregate sum and the items thereof allowed to each department, office or commission as the council shall deem advisable subject to limitations in this charter, but the council shall not change any item in nor the total of the mayor's estimate, except upon a vote of two-thirds of each body thereof."

"199. After the final estimate is made in accordance herewith, it shall be signed by the mayor and clerk and filed in the office of the auditor. The several sums shall then be appropriated by ordinance for the ensuing fiscal year to the several purposes and departments therein named. The total amount appropriated shall in no case exceed ninety (90) per cent of the amount of money to be received during the year by taxation, estimated upon the assessor's valuation and the tax levy, and from other sources of revenue."

The claim of the city is that these sections cover only "the expenses of conducting the public business *for the next ensuing fiscal year* and that future disbursements for considerations to be performed after the *next ensuing* fiscal year are not in this class. The city further argues that by the terms of the contract as drawn and to be

executed all payments are restricted to sums to be appropriated and budgeted and so the city is not bound, except to the extent of what it had already appropriated to this end, (which pro tanto, accords with said sections) and to what it chooses to appropriate in the future.

This argument is sound unless by the contract the city shall expressly or impliedly agree to appropriate. There is no such expressed agreement in the proposed contract, and we do not think one is to be implied. The city is simply awarding a contract by which the contractor is to work till the present appropriation, $1,500,000, is exhausted, and then need work no more unless and until there is another appropriation. It is true that the proposed contract provides, as is common in such instruments, that the contractor shall complete the work, but it is all qualified by the provision that "the work shall only progress to the extent that money has been appropriated therefor" and the city agrees to pay only "out of such moneys as theretofore shall have been appropriated." If this is not so then the city has so tied herself up by her charter that she can make no contract for a completed building that cannot be finished in one year.

2. It is said that no sufficient appropriation has been made. What we have said above answers this point, but we may add that since the city has answered that she has not entered and does not intend to enter into any contract by which she shall be or become obligated otherwise than to the extent that appropriations have been made or as they shall be made, the court is shown to be in error on this point because the injunction goes beyond anything that would be proper after such an answer. The most the court could do in such case would be to forbid entry into a contract which did not leave the city free to appropriate or not, as she chose.

The case of *San Francisco v. Boyle*, 195 Cal. 426, 233 Pac. 965, cited by defendant in error is rather against him. It is there said that the city was bound by the contract to make the payments; if so, it might be said

that it had exceeded its indebtedness; but here the question is: Is the city so bound? We say no; then she has not exceeded her appropriation.

3. Article 4, section 1249, of the Municipal Code provides that "all stone used in municipal works  *  *  * shall be  *  *  * worked, dressed or carved within the boundaries of the city," and requires such a clause in the specifications of every contract.

Inasmuch as the contract in question must, before execution, be authorized by ordinance, such ordinance will be an implied repeal, as far as this contract is concerned, of said section. The council cannot bind itself by ordinance not to do what it may by ordinance do. As far as this point is concerned the decree enjoins the council from repealing its own ordinance.

4. Must the city use materials produced in Colorado according to C. L. §§ 453–455? The substance of these sections is that every proposal for bids for public works must provide for a preference of Colorado products and such products, with certain qualifications which we need not notice here, must be used in such works; but it is claimed that Denver is not subject to these sections. We think she is.

The city may assume exclusive control of all matters of local and municipal concern; Const. art. XX, sec. 6; *El Paso County v. Colorado Springs,* 66 Colo. 111, 117, 180 Pac. 301; *Denver v. Hallett,* 34 Colo. 393, 395, 83 Pac. 1066; *Colorado Springs v. Hydro Elec. Co.,* 57 Colo. 169, 140 Pac. 921; *Denver v. Mountain States Telephone Co.,* 67 Colo. 225, 184 Pac. 604, and many other cases. She has assumed such control; therefore the state laws do not control her in such matters. See the above cases.

Is, then, the building of a court house a matter of local and municipal concern? A majority of the court, after most careful and protracted study and conferences, think not, and that this was the fallacy in our former opinion before the rehearing. In *Denver v. Tihen,* 77 Colo. 212, 235 Pac. 777, we held that matters of general public

policy of the state, e. g., exemption from taxation, were not of local and municipal concern, but of general public interest, and that the legislature retained full control thereof notwithstanding the twentieth and the so-called Home Rule Amendments. That the building and maintenance of a court house is of general public interest is manifest from the necessities of justice. That a court house and its usual incidents be maintained in Denver county is of nearly as great importance to the state at large as to Denver, and so of the court house of every other county. The legislation of the state which requires every county to maintain such a place is a recognition of this proposition. This conclusion is not in conflict with *People v. Cassiday,* 50 Colo. 503, 117 Pac. 357, so far as that case relates to the present one, since the functions of the county commissioners are there (p. 515) said not to be subject to local legislation and control. The claim that the building is a municipal building, and not a court house will not avail because the county is required to build a court house and this is to be used as such.

In the course of our consideration of this case some of us have been in doubt as to the constitutionality of the said sections 453–455, lest they might amount to a restriction of commerce between states and subvert or abridge the right of citizens of other states or deny equal protection of the laws, but our doubts are set at rest by *Heim v. McCall,* 239 U. S. 175, 36 Sup. Ct. 78, 60 L. Ed. 206, which holds that the state may buy of whom it will and that the municipalities are mere instruments of the state and so must buy as the state directs. See also *Atkin v. Kansas,* 191 U. S. 207, 24 Sup. Ct. 124, 48 L. Ed. 148; *Tribune Co. v. Barnes,* 7 N. D. 591, 75 N. W. 904; *State v. Book & Sta. Co.,* 115 Miss. 254, 76 So. 258, Ann. Cas. 1918B, 1013.

Judgment affirmed.

MR. JUSTICE WALKER not participating.

*On Motion to Modify Opinion.*

MR. CHIEF JUSTICE DENISON.

The plaintiff in error moves to modify the opinion to indicate whether the court intended to affirm an injunction forbidding the erection of a court house at all. We had no such intention and do not so construe the injunction of the district court. We intend to say that the city may build upon compliance with the statute concerning Colorado material.